Matter of Jeremiah C. (Kim C.) (2022 NY Slip Op 07292)

Matter of Jeremiah C. (Kim C.)

2022 NY Slip Op 07292

Decided on December 22, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 22, 2022

Before: Webber, J.P., Friedman, Gesmer, Shulman, Rodriguez, JJ. 

Docket No. B-08204/18 Appeal No. 16957 Case No. 2021-02981 

[*1]In the Matter of Jeremiah C., A Child Under the Age of Eighteen Years, etc., Kim C., Respondent-Appellant, Catholic Guardian Services, Petitioner-Respondent.

Richard L. Herzfeld, P.C., New York (Richard L. Herzfeld of counsel), for appellant.
Magovern & Sclafani, Mineola (Joanna M. Roberson of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Diane Pazar of counsel), attorney for the child.

Order of fact-finding and disposition (one paper), Family Court, New York County (Jane Pearl, J.), entered on or about August 10, 2021, which, upon a finding of permanent neglect, terminated respondent mother's parental rights to the child and transferred care and custody to petitioner agency and the Commissioner of Social Services for the purpose of adoption, unanimously affirmed, without costs.
The finding that the mother permanently neglected the child is supported by clear and convincing evidence (Social Services Law § 384-b[7][a]). The mother had two other children, Jamar J. (born March 16, 2006), who died on June 17, 2011, when he was five years old due to the mother's abuse. Her parental rights to a second child, Heaven J. (born February 25, 2009), who "witnessed her mother's assault on Jamar which caused his death" when she was about two years old, have been terminated. In the instant case, the record shows that the agency made diligent efforts to encourage and strengthen the parental relationship by, among other things, developing a plan for appropriate services and referring the mother to drug treatment, mental health treatment, parenting skills classes, dyadic therapy to improve and strengthen her relationship with the child, and scheduling regular visitation (see Social Services Law § 384—b[7][a], [c], [f]; Matter of Antonio James L. [Eric David L.], 156 AD3d 554, 554 [1st Dept 2017]; Matter of Felicia Malon Rogue J. [Lena J.], 146 AD3d 725, 726 [1st Dept 2017]).
The record also establishes that despite the agency's diligent efforts, the mother failed to plan for the child's future during the statutorily relevant time period because she lacked insight into her behavior, and failed to accept any responsibility for causing her other son's death, even though it affected her daughter who witnessed the assault, and even though it resulted in the mother's incarceration and termination of her rights as to Heaven H. (see Social Services Law § 384-b[7][a], [f]; see e.g. Matter of Alexander R.H. [Renzo N.H.], 201 AD3d 465, 466 [1st Dept 2022], lv denied 38 NY3d 903 [2022]). To the extent that the mother attended therapy and parenting classes, there is no evidence that she gained insight or otherwise benefitted from them (see Matter of Julianna Victoria S. [Benny William W.], 89 AD3d 490, 491 [1st Dept 2011], lv denied 18 NY3d 805 [2012]). That the mother consistently visited the child does not preclude a finding of permanent neglect (see Matter of Autumn P. [Alisa R.], 129 AD3d 519, 520 [1st Dept 2015]), particularly since the mother had never been permitted to have unsupervised visits with the child.
A preponderance of the evidence demonstrates that it was in the child's best interests to terminate the mother's parental rights and free the child for adoption (see Matter of Leroy Simpson M. [Joanne M.], 122 AD3d 480, 481 [1st Dept 2014]). A suspended judgment was not warranted here, because the dispositional testimony of the mother's expert [*2]established that the timeframe for the mother to become the child's primary parent "would be a long one," and that he should not "be alone with his mother in private places" because there was no evidence that she "could control her responses when she felt threatened." Finally, the evidence presented at the dispositional hearing established that the child had been living with his foster parents for most of his life, he was doing well in their care, and that his foster parents wanted to adopt him (see Matter of Sandra N. v Administration for Children's Servs., 103 AD3d 591, 592 [1st Dept 2013], lv denied 21 NY3d 857 [2013]; Matter of Nicole Monique H., 270 AD2d 205 [1st Dept 2000], lv denied 95 NY2d 761 [2000]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 22, 2022